## 73626. SOUTHERN GENERAL INSURANCE COMPANY
## v. MATHIS et al.
### (360 SE2d 19)

CARLEY, Judge.

This appeal arises from the following facts: In February of 1981, Paul Mathis submitted to appellant-defendant insurer an application for motor vehicle liability insurance. The section of appellant's application form which related to optional no-fault PIP coverage contemplated that an applicant would check one of two boxes, either a box which indicated that he was applying for a policy to be issued "WITH THIS COVERAGE" or a box which indicated that he was applying for a policy to be issued "WITHOUT THIS COVERAGE." Mathis checked the box signifying that he was applying for a policy to be issued "WITH THIS COVERAGE." For the applicant who had checked the box indicating his election of optional no-fault PIP coverage, another series of three boxes was provided, ostensibly for the applicant to indicate that the optional no-fault PIP coverage in his policy should be issued "WITH [THE] LIMIT OF" either $10,000, $25,000, or $50,000. Mathis did not check any one of the three boxes which had been provided for him to signify an election of the limit of his optional no-fault PIP coverage.

Despite Mathis' indication on his application that he wished to be issued a policy "WITH THIS COVERAGE," the policy that appellant issued to Mathis contained no express provision for any optional no-fault PIP coverage and no premium for that coverage was charged. Mathis never objected to the absence of any express provision for optional no-fault PIP coverage in the policy that had been issued by appellant. The policy as it was thereafter renewed by Mathis and appellant continued to contain only a provision for $5,000 basic no-fault PIP coverage and only the premium for that coverage was ever charged. On August 15, 1984, Mathis was injured and, several months later, he died as the result of his injuries.

The appellee-plaintiffs in this case are Mathis' widow and the executor of his estate. After Mathis' death, appellees filed this action against appellant, seeking to recover optional no-fault benefits under Mathis' policy, punitive damages and attorney's fees. Appellant answered and raised, among its other defenses, a lack of any optional no-fault PIP coverage. Subsequently, cross-motions for summary judgment were filed and the trial court conducted a hearing on the motions. With regard to the issue of appellant's liability for optional no-fault benefits, the trial court granted appellees' motion and denied appellant's motion. With regard to the issues of appellant's liability for punitive damages and attorney's fees, the trial court, in effect, denied summary judgment to both appellees and appellant. Appellant appeals from the order granting partial summary judgment in favor of

appellees, enumerating both that ruling and the denial of its own motion as error.

1. Former OCGA § 33-34-5 was in effect when Mathis applied to appellant for insurance. Subsection (a) (1) of former OCGA § 33-34-5 provided: "Each insurer *shall . . . make available* on an optional basis the following coverage: An aggregate limit of benefits payable without regard to fault up to $50,000.00 per person, which *may be rejected or reduced* to not less than an aggregate limit of benefits payable without regard to fault of $5,000.00 per person *by written consent* of the policyholder." (Emphasis supplied.) Former OCGA § 33-34-5 (a) (1) has been construed as establishing that "both the insurer and the policyholder face[d] a minimum requirement. The insurer [could] not offer less than $50,000 and the policyholder [could] not accept less than $5,000." *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709, 711 (1) (300 SE2d 673) (1983). Subsection (b) of former OCGA § 33-34-5 further established the procedure by which the insurer was to make its offer of the minimum $50,000 no-fault PIP coverage to an applicant and through which the insurer was to secure the applicant's written rejection or reduction of that offer. "[N]o . . . policy shall be issued in this state unless [the required signature] spaces [on an application form] are completed and signed by the prospective insured." Former OCGA § 33-34-5 (b). Thus, former OCGA § 33-34-5 (a) (1) otherwise required an insurer to offer the applicant a minimum of $50,000 coverage for optional no-fault PIP benefits and also to secure the applicant's written rejection or reduction of that offer and a failure on the part of the insurer to have secured the rejection or reduction of its mandatory offer in the precise "manner provided in [former OCGA § 33-34-5 (b)] result[ed] in [the applicant's] acceptance of the minimum coverage required to be offered which [was] $50,000. The absence of a rejection [by the applicant] form[ed] a contract for $50,000 PIP from its inception." *Flewellen v. Atlanta Cas. Co.*, supra at 715 (3).

In this case, it is clear that appellant did purport to provide to Mathis an election as to optional no-fault coverage. Pursuant to subsection (a) (1) of former OCGA § 33-34-5, appellant's efforts in this regard must be construed as its *minimum offer* to Mathis of $50,000 in optional no-fault coverage. " 'Existing and valid statutory provisions enter into and form a part of all contracts of insurance to which they are applicable. . . . [Cit.]' [Cit.]" *State Farm Mut. Auto. Ins. Co. v. Landskroener*, 150 Ga. App. 308, 309 (1) (257 SE2d 376) (1979). However, it is immaterial in this case whether appellant's application form afforded Mathis an election which complied with the procedural requirements of former OCGA § 33-34-5 (b). Mathis purported to make an *express acceptance* of appellant's offer to issue a policy "WITH THIS COVERAGE" and, therefore, this case does *not* turn

upon any issue of a procedural deficiency in an applicant's *ostensible rejection* of appellant's offer. Accordingly, former OCGA § 33-34-5 (b) is irrelevant here, in that appellees do not urge that, "[i]n the absence of such a rejection [as was required by former OCGA § 33-34-5 (b)], the policy . . . provid[ed] $50,000 PIP coverage from its inception." *Flewellen v. Atlanta Cas. Co.*, supra at 712 (1). Rather than advancing this theory of coverage through appellant's procedural default, appellees rely entirely upon former OCGA § 33-34-5 (a) (1). They urge that it is Mathis' express acceptance of appellant's mandatory offer of the minimum $50,000 optional no-fault coverage which authorizes their recovery of benefits.

Since a recovery by appellees is ultimately dependent upon Mathis' acceptance of appellant's offer under former OCGA § 33-34-5 (a) (1) rather than upon appellant's non-compliance with the procedural requirements of former OCGA § 33-34-5 (b) as interpreted in *Flewellen*, supra, it follows that the analysis in *Mullins v. First Gen. Ins. Co.*, 253 Ga. 486 (322 SE2d 265) (1984) is not controlling in this case. In *Mullins*, our Supreme Court found that the legislative intent of the 1982 amendments to former OCGA § 33-34-5 "was to alter the law in order to bar claims for optional PIP benefits by insureds who held policies existing as of November 1, 1982 which were *not in compliance with former OCGA § 33-34-5 (b)*. [Cit.]" (Emphasis supplied.) *Mullins v. First Gen. Ins. Co.*, supra at 487. "*Flewellen* merely created a remedy for *a violation of [former] OCGA § 33-34-5 [(b)]*, not an implied substantive contractual right. . . . That signature requirement was a procedure to be followed to indicate the [applicant's] acceptance or rejection of optional coverages, and was thus not a vested right. [Cits.]" (Emphasis supplied.) *Mullins v. First Gen. Ins. Co.*, supra at 488.

2. As discussed, former OCGA § 33-34-5 (a) (1) required that an insurer offer an applicant a minimum of $50,000 in optional no-fault PIP coverage. As previously indicated, appellant did purport to make such an offer to Mathis. The validity and the effect of Mathis' purported acceptance of that offer are the controlling issues in this case.

Mathis checked the box on appellant's application form which affirmatively indicated that he did want a policy issued with optional no-fault PIP coverage and he did not check any box which would indicate his "written consent" to a reduction in the limits of that coverage below $50,000. It is thus clear that Mathis' application evinces his express acceptance of the minimum offer that, under former OCGA § 33-34-5 (a) (1), appellant was required to make to him. Since Mathis affirmatively "accepted" appellant's required minimum "offer," it would follow that he had a contractual right to have $50,000 in no-fault PIP coverage included in the provisions of any policy that appellant may have subsequently issued to him pursuant to his applica-

tion. Mathis would also have a statutory right to a policy which afforded him that coverage. "All policies of motor vehicle liability insurance issued in this state *must be in accordance with the requirements of this chapter. . . .*" (Emphasis supplied.) OCGA § 33-34-3 (a) (1). Pursuant to Mathis' affirmative acceptance of appellant's offer, $50,000 was the minimum coverage that appellant was required to afford him under former OCGA § 33-34-5 (a) (1) and, pursuant to OCGA § 33-34-3 (a) (1), appellant was thereby obligated to issue a policy "in accordance with" that statutory requirement. "[W]hen an insurer issues a policy with provisions not in compliance with the law . . . the provisions of the statute will be grafted into the policy." *Flewellen v. Atlanta Cas. Co.*, supra at 714 (3).

Thus, by virtue of his affirmative acceptance of appellant's offer, Mathis was vested with contractual and statutory rights to $50,000 in optional no-fault PIP coverage, not merely an inchoate remedy for any failure on the part of appellant to have secured his procedurally precise rejection of such coverage. It therefore follows that the 1982 amendments to former OCGA § 33-34-5 would have no negative effect on appellees' entitlement to enforce those vested rights by seeking to recover the benefits under Mathis' policy. Compare *Mullins v. First Gen. Ins. Co.*, supra. " 'It is well settled that a statute affecting substantive rights operates prospectively. [Cit.]' [Cit.]" *Southern R. Co. v. A. O. Smith Corp.*, 134 Ga. App. 219, 220 (1) (213 SE2d 903) (1975).

3. Appellant urges that appellees still cannot recover because, under the uncontroverted evidence, Mathis breached his duty to examine his policy and to reject it as failing to provide him the minimum optional no-fault PIP coverage for which he had applied. "If the policy as . . . issued . . . did not conform to the application, it would constitute only a counter offer. . . . [Cit.]" *Boswell v. Gulf Life Ins. Co.*, 197 Ga. 269, 272 (29 SE2d 71) (1944). " 'When a policy of insurance, duly delivered to the applicant differs materially from the kind of policy for which he applied or intended to apply, it is his duty, if he does not desire to accept the policy issued to him, to return or offer to return the same, within a reasonable time, . . . and if the applicant neglects to examine the policy delivered to him' the contract is binding. . . . [Cit.]" *Parris & Son v. Campbell*, 128 Ga. App. 165, 173-174 (13) (196 SE2d 334) (1973).

The general legal principles upon which appellant relies are not applicable in this case. An insurer's obligation with regard to its issuance of policies containing no-fault coverage is controlled by statute. Pursuant to former OCGA § 33-34-5 (a) (1), appellant was required to offer Mathis a minimum of $50,000 in optional no-fault coverage. Pursuant to Mathis' express acceptance of that offer, any policy that appellant subsequently issued to him was statutorily required to pro-

vide optional no-fault PIP coverage in the amount that he had accepted. See OCGA § 33-34-3. "As we have already stated, when an insurer issues a policy with provisions not in compliance with the law . . . the provisions of the statute will be grafted into the policy." *Flewellen v. Atlanta Cas. Co.,* supra at 714 (3). Accordingly, under the applicable statutory provisions, appellant's application form constituted its offer to Mathis, not Mathis' offer to appellant and the policy that was subsequently issued pursuant to that application cannot be deemed to be appellant's mere counter offer to Mathis which he then accepted by failing to reject it.

Moreover, appellees do not seek to recover benefits pursuant to such insurance coverage as Mathis mistakenly thought he had properly secured. Compare *Turner, Wood & Smith, Inc. v. Reed,* 169 Ga. App. 213 (311 SE2d 859) (1983). Mathis had secured $50,000 in optional no-fault PIP coverage *as a matter of law* when appellant issued him a policy of motor vehicle liability insurance pursuant to the application which contained his express acceptance of the minimum amount of such coverage as appellant was then required to offer to him. Compare *Miller v. Allstate Indem. Co.,* 173 Ga. App. 114 (325 SE2d 599) (1984). That the policy as it was issued may have failed to contain a formal and express extension of the requisite coverage is an oversight or mistake which is attributable solely to appellant. That Mathis may not have discovered or objected to appellant's oversight or mistaken failure to comply with its statutorily-mandated duty will not serve to bar appellees from seeking to recover benefits pursuant to such coverage as was provided to Mathis as a matter of law. Although they rely upon subsection (a) rather than subsection (b) of former OCGA § 33-34-5, appellees are nevertheless entitled to urge that, by virtue of Mathis' express acceptance of appellant's offer, his policy "provid[ed] $50,000 PIP coverage from its inception. [They have] the right to demand and receive the benefit of $50,000 coverage upon tender by [them] of such additional premium as may be due and filing of proof of loss. . . ." *Flewellen v. Atlanta Cas. Co.,* supra at 712 (1).

4. As to the issue of appellant's liability for optional no-fault PIP benefits, the trial court correctly granted summary judgment in favor of appellees and denied appellant's motion for summary judgment. The only ground urged in support of appellant's motion for summary judgment as to its liability for punitive damages and attorney's fees was its asserted non-liability for optional no-fault PIP benefits. Accordingly on the record that is now before us, the trial court did not err in denying appellant's motion as to those issues.

*Judgment affirmed. Banke, P. J., and Benham, J., concur.*

828

Decided July 1, 1987 — 
Rehearing denied July 28, 1987 — 

*Michael J. Goldman*, for appellant.
*Janice Thurmond*, for appellees.