A92A1000. SALMON v. THE STATE.
(426 SE2d 160)

MCMURRAY, Presiding Judge.

Following a jury trial, defendant was convicted of possession of cocaine and obstruction of an officer (a misdemeanor). He had defended the case solely on the ground of entrapment. This appeal followed. *Held*:

1. Defendant was arrested in a reverse sting operation in which he was set up by his supplier, Judy McCord. On cross-examination, Donnie Canada, a police officer on special assignment with the Rome/Floyd County Metro Task Force testified that he did not recall telling McCord that she could plead first offender status and receive proba-

tion if she cooperated with the State. Defendant sought to impeach Canada with a tape recording of a conversation that Canada had with McCord on November 8, 1991. The conversation was telephonic: Canada used a cellular telephone in his automobile; McCord used a regular telephone. Defendant recorded the conversation using a radio scanner. In the midst of the conversation, Canada told McCord that she "can plead first offender status." The trial court would not permit defendant to impeach Canada with a transcript of the conversation, ruling that the conversation was recorded in violation of OCGA § 16-11-62 and was, therefore, inadmissible. OCGA § 16-11-67. Defendant enumerates error upon the trial court's ruling.

OCGA § 16-11-62 provides, in part: "It shall be unlawful for: . . . (4) Any person intentionally and secretly to intercept by the use of any device, instrument or apparatus the contents of a message sent by telephone, telegraph, letter, *or by any other means of private communication. . . .*" (Emphasis supplied.) Does this Code section apply to cellular telephones?

" 'A cardinal rule of statutory construction is that courts must look to the purpose and intent of the legislature and construe statutes so as to implement that intent.' *Enfinger v. Intl. Indem. Co.,* 253 Ga. 185 (317 SE2d 816) (1984); *Wilson v. Bd. of Regents,* 246 Ga. 649, 650 (272 SE2d 496) (1980). OCGA § 16-11-62, formerly Code Ann. § 26-2002, was enacted in 1967. Former Code Ann. § 26-2001, Ga. L. 1967, pp. 844, 845, states the purpose of Code Ch. 26-20, relating to the offenses of 'peeping tom' and eavesdropping. 'It is the public policy of this State and the purpose and intent of this Chapter to protect the citizens of this State from invasions upon their privacy. This Chapter shall be construed in light of this expressed policy and purpose. The employment of devices which would permit the clandestine overhearing, recording or transmitting of conversations or observing of activities which occur in a private place has come to be a threat to an individual's right of privacy and, therefore, should be prohibited. It is further the purpose of this Chapter to provide to authorized law enforcement officers modern methods of crime detection and prevention under strict procedures and safeguards.' " *Ransom v. Ransom,* 253 Ga. 656, 657 (1), 658 (324 SE2d 437).

Given the language of OCGA § 16-11-62 (4) and the legislature's stated intention that the statute is to protect persons from invasions upon their privacy, we think it is clear that the legislature did not intend to prohibit the interception of a cellular telephone conversation. After all, unlike line telephone communications, cellular telephone communications are not private. Why? Because cellular telephones transmit "FM" radio waves for anyone to hear. Thus, cellular telephone users have no justifiable expectation of privacy.

Our holding is in conformance with the vast majority of jurisdic-

tions. The "courts addressing the issue of expectation of privacy in a conversation on a telephone which transmits by radio waves have overwhelmingly held there is no such expectation of privacy. *Tyler v. Berodt* (8th Cir. 1989), 877 F.2d 705; *United States v. Hall* (9th Cir. 1973), 488 F.2d 193; *United States v. Hoffa* (7th Cir. 1970), 436 F.2d 1243; *Edwards v. Bardwell* (M.D.La. 1986), 632 F.Supp. 584, *aff'd mem.* (5th Cir. 1986), 808 F.2d 54; *State v. Smith* (1989), 149 Wis.2d 89, 438 N.W.2d 571; *State v. Howard* (1984), 235 Kan. 236, 679 P.2d 197; *People v. Fata* (1988), 139 Misc.2d 979, 529 N.Y.S.2d 683." *People v. Wilson*, 554 NE2d 545, 552 (Ill. App. 1 Dist. 1990).

Defendant did not violate OCGA § 16-11-62 (4) when he intercepted the cellular telephone conversation between Officer Canada and Judy McCord. It follows that the trial court erred in failing to permit defendant to cross-examine Officer Canada with regard to his November 8, 1991, cellular telephone conversation.

2. A November 11, 1991, telephone conversation between Rome/Floyd County Task Force Officer Terry Davis and one Lisa Tuck was recorded by Tuck. The officer was involved in the reverse sting operation which led to the arrest of defendant. Tuck was arrested on a drug charge in an unrelated case.

In the telephone conversation between Officer Davis and Tuck, the officer suggested that Tuck could avoid being prosecuted if she would "go out and seduce someone." At trial, defense counsel asked Officer Davis if she considered it improper to entice someone to buy drugs. The officer said she thought it was improper and added that she did not operate that way.

Defense counsel attempted to impeach the officer with the statement contained in her telephone conversation with Tuck. The trial court refused to permit defense counsel to question the officer about the recorded conversation and defendant enumerates error upon that ruling.

" 'A witness may be impeached by disproving the facts testified to by him.' Code Ann. § 38-1802 [OCGA § 24-9-82]. However, while a witness may be impeached on a collateral issue which is indirectly material to the issue in the case (*Glo-Ann Plastic Industries, Inc. v. Peak Textiles, Inc.*, 134 Ga. App. 924 (4) (216 SE2d 715)), a witness may not be impeached because of a discrepancy as to a wholly immaterial matter. *Mann v. State*, 124 Ga. 760 (4) (53 SE 324) (1905)." *Gilbert v. State*, 159 Ga. App. 326, 327 (2) (283 SE2d 361). Was the discrepancy indirectly material to the issue in the case or a wholly immaterial matter?

We are inclined to the view that the discrepancy was indirectly material to the issue of defendant's guilt or innocence. Compare *Kennedy v. State*, 9 Ga. App. 219 (1) (70 SE 986) with *Fountain v. State*, 7 Ga. App. 559 (1) (67 SE 218). Defendant's sole defense was entrap-

ment. We think the testimony of Officer Davis with regard to methods used to lure and entice criminal defendants has a bearing, albeit indirect, on defendant's entrapment defense. The trial court erred in ruling otherwise.

3. The evidence was sufficient to enable any rational trier of fact to find that defendant was not entrapped beyond a reasonable doubt. The trial court did not err in denying defendant's motion for a directed verdict of acquittal. See *State v. Royal*, 247 Ga. 309 (1) (275 SE2d 646). However, in view of our holding in Divisions 1 and 2, defendant must be afforded a new trial.

*Judgment reversed. Sognier, C. J., concurs. Cooper, J., concurs specially.*

COOPER, Judge, concurring specially.

Although I agree with Division 2 of the majority opinion which reverses the judgment below, I must respectfully disagree as to Division 1 as I find that appellant violated OCGA § 16-11-62 (4) when he intercepted the conversation between Officer Canada and McCord. While it is true that the expectation of privacy analysis adopted by the majority has been applied in cases involving the federal wiretap statute and in similar contexts in other states, the issue in this case is not whether the interception of cellular phone conversations violates the U. S. or Georgia Constitutions, the federal statute, or the statutes of other states modeled after the federal statute but whether it offends the Georgia statute. Unlike the federal statute prohibiting the wilful interception and disclosure of wire, oral and electronic communication, which defines oral communication as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation" (18 USC § 2510 (2)) and which specifically excludes "the radio portion of a cordless telephone communication that is transmitted between the cordless telephone handset and the base unit" (18 USC § 2510 (12) (A)), OCGA § 16-11-62 (4) simply prohibits any intentional and secret interception "by the use of any device, instrument, or apparatus the contents of a message sent by *telephone*, telegraph, letter, or by any other means of private communication." The cellular telephone is not a new invention. The 1986 overhaul of the federal wiretap statute included certain electronic communication for the first time and specifically excluded cordless telephone communication. In the ensuing years, the Georgia legislature has not seen fit to qualify the term "telephone" to distinguish telephonic communication involving a wire or cable connection between callers and telephonic communication transmitted by radio waves. Therefore, application of the clear and unambiguous language of the Georgia statute to the facts of this case does not require the expectation of privacy

analysis. "[A] state law must meet the minimum standards of [federal law] in protecting privacy but may impose more stringent requirements. . . ." *Ellis v. State*, 256 Ga. 751, 754 (2) (353 SE2d 19) (1987). In my view, the Georgia statute is proof that, in furtherance of its policy, the legislature intended to set forth more stringent requirements involving wiretapping and eavesdropping. See, e.g., *Ellis*, supra.

Moreover, OCGA § 16-11-62 (4) prohibits the intentional and secret interception "by the use of any device, instrument or apparatus. . . ." A "device" is "an instrument or apparatus used for over-hearing, recording, intercepting, or transmitting sounds . . . which involves in its operation electricity, electronics, infrared, laser or similar beams. . . ." OCGA § 16-11-60 (1). This definition is sufficiently broad to include a radio scanner, and even though the conversation was transmitted in part over FM radio waves, because McCord was using a conventional telephone, the secret *use* of the device was strictly prohibited. That prohibition is not to be ignored despite the widespread availability of radio scanners in the absence of clear direction to the contrary by the General Assembly. Accordingly, appellant's interception of the conversation was illegal, and the trial court did not err in refusing to allow appellant to impeach Officer Canada with a transcript of the conversation. OCGA § 16-11-67.

DECIDED SEPTEMBER 29, 1992 —
RECONSIDERATION DENIED NOVEMBER 25, 1992

*Cook & Palmour, Bobby Lee Cook, L. Branch Connelly*, for appellant.

*Stephen F. Lanier, District Attorney, Lisa W. Pettit, Tambra P. Colston, Assistant District Attorneys*, for appellee.